UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-593-R

HENRY BECK LIVINGSTON                                                                                   PLAINTIFF

V.

LOUISVILLE/JEFFERSON COUNTY                                                                  DEFENDANTS
METRO GOVERNMENT

AND

CORRECTIONAL MEDICAL SERVICES, INC.

**MEMORANDUM OPINION**

The Louisville/Jefferson County Metro Government ("Metro Government") has filed a motion for summary judgment of Mr. Livingston's claims (docket no. 107). The third-party defendant, Correctional Medical Services, Inc. ("CMS") has filed a corresponding motion, adopting and incorporating by reference all the facts and arguments presented by Metro Government (docket no. 110). The court has reviewed the motions, Mr. Livingston's responses thereto, and the exhibits and evidence presented by the parties, and finds that judgment should be granted in favor of Metro Government and CMS. Mr. Livingston has failed to present the court with sufficient evidence establishing that there is a genuine issue of material fact with respect to several important elements of his claim.[1]

---

[1] In a prior motion (docket no. 63), Metro Government asked the court to dismiss, as a matter of law, Mr. Livingston's claims of Eighth Amendment violations pursuant to 42 U.S.C. § 1983 and his claims pursuant to 42 U.S.C. § 1981. The court has granted that motion and dismissed those claims by separate order.

**I.**

The facts, construed in the light most favorable to the non-movant, are as follows. Henry Beck Livingston was incarcerated in the Metro Government's jail as a pre-trial detainee from August 1, 2003, to July 1, 2004. When Mr. Livingston entered the jail, he was suffering from lumbar herniations, diabetes mellitus, hypertension, and severe heart failure. These conditions required medication and consistent medical monitoring. During Mr. Livingston's stay, he also occasionally required treatment at medical facilities outside of the jail, and his post-treatment care at the jail should have adhered to the discharge orders and other specific instructions of his treating physicians.

Employees of Correctional Medical Services, Inc., a private vendor hired to provide medical services for inmates at the Metro Government jail, were responsible for supervising Mr. Livingston's medical treatment (including the administration of his medicine) and his medical condition during his stay at the jail. Mr. Livingston now claims that the CMS and other jail employees were so derelict in their duties that they violated his rights guaranteed by the Fourteenth Amendment of the United States Constitution by subjecting him to unsanitary living conditions and failing to provide him with adequate medical care in accordance with acceptable practice and the orders of his physicians.

Following the expiration of the discovery period (*see* docket no. 82), both defendants moved for summary judgment. Plaintiff responded, attaching only copies of a few incident and grievance reports. Although represented by counsel at the time, he proffered no other evidence in support of his claims.

## II.

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir.2005)(quoting Fed.R.Civ.P. 56(c)). In evaluating a motion for summary judgment, the court must view "the facts and any inferences that can be drawn from those facts ... in the light most favorable to the non-moving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Before evaluating the facts presented, the court will first describe what plaintiff must establish, as a matter of law, to prevail on his claims.

### A.

Mr. Livingston's sole remaining claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. As such, it has two basic requirements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Flint v. Kentucky Dep't of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001).

### 1. Whether the Defendants are Subject to Suit Under 42 U.S.C. § 1983

Whether and for what defendant may be sued under 42 U.S.C. § 1983 depends on whether the defendant in question is a state, municipal or private entity. It is well established that a municipality, such as Metro Government may be held liable under 42 U.S.C. § 1983. *See*

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978).  CMS is not a municipal entity, but a private company that Metro Government paid to provide medical services at the jail.  Although private "persons" are ordinarily not subject to liability under 42 U.S.C. § 1983, the law is clear that contracting out medical care does not relieve a municipality of its constitutional duty to provide adequate medical treatment to those in custody, and it does not deprive prisoners of the means to vindicate their Eighth Amendment Rights.  *See, e.g., West v. Atkins*, 487 U.S. 42, 56 (1988); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993).  Consequently, CMS is also subject to suit under § 1983.  *See id.*

### 2.    Defendant Has not Established any Municipal Policy or Custom

A municipality cannot be held responsible for a constitutional deprivation, however, unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Id.* at 691; *Deaton v. Montgomery County, Ohio,* 989 F.2d 885, 889 (6th Cir. 1993).  Simply stated, to present a viable claim, Mr. Livingston must "identify the policy, connect the policy to the [Metro Government] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir. 1993)(quoting *Coogan v. Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *cert. denied*, 510 U.S. 1177 (1994)).  As is true with respect to the municipality that hired CMS, Mr. Livingston must establish a municipal custom or policy that led to the alleged violations of his rights in order to maintain a claim against CMS itself. *See, e.g., West*, 487 U.S. at 56; *Hicks*, 992 F.2d at 1458.

Metro Government and CMS cannot be held liable under § 1983 for injuries inflicted solely by their employees or agents; the doctrine of respondeat superior is inapplicable. *Monell*,

436 U.S. at 691- 95. "'It is only when the "execution of the government's policy or custom ... inflicts the injury" that the municipality may be held liable under § 1983.'" *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (internal citation omitted); *see also Monell,* 436 U.S. at 694. In other words, the local government's policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson,* 454 U.S. 312, 326 (1981) (quoting *Monell,* 436 U.S. at 694).

A plaintiff "bears a heavy burden in proving municipal liability." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). Mr. Livingston has provided the court with copies of several of his grievances, action request forms, and incident reports pertaining to incidents that gave rise to his claims, but he has proffered no evidence, other than his own conclusory allegations, of any formally approved ordinance, regulation, or decision that led to his alleged mistreatment, nor any evidence that the actions and practices of which the defendants are accused are so widespread, permanent, and well-settled that they have the force of law. At most, he has established only that the defendants did not act in accordance with existing policies. *See* Pl's Resp. Mem. at 3-4 (docket no. 120). This is insufficient. *See Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)(the policy or custom at issue must be the moving force of the constitutional violation); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (2006)(conclusory allegations are not enough for a non-movant to survive summary judgment). Accordingly, even if the court were to assume that Mr. Livingston had proven that he was subjected to unsanitary living conditions and improper medical care that rose to the level of a constitutional violation, there is no question of fact with respect to the viability of his claims pursuant to § 1983.

**B.**

If Mr. Livingston had established an official policy or custom that directly resulted in the constitutional violations of which he complains, summary judgment in favor of the defendants would still be proper, because Mr. Livingston has not presented the court with sufficient evidence regarding his claims pertaining to the conditions of his pre-trial detention, specifically that he was denied appropriate medical care, deprived of "life's necessities," and exposed "to extreme and dangerous conditions." *See* Am. Compl. at ¶ 1.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Fourteenth Amendment."[2] *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Fourteenth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A conditions-of-confinement claim (including one pertaining to the deprivation of medical care) has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized

---

[2]The Eighth Amendment forbids the infliction of "cruel and unusual punishments." Because the Cruel and Unusual Punishments Clause "is concerned" with punishment by the state "after it has secured a formal adjudication of guilt in accordance with due process of law," *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), it does not apply to pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, *see e.g., Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir.2005), which provides similar if not greater protections than the Cruel and Unusual Punishments Clause. *See Spencer v. Bouchard,* 449 F.3d 721, 727-28 (6th Cir. 2006)(internal citations omitted).

measure of life's necessities." *Id.* at 834 (internal quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). The deliberate-indifference requirement is satisfied "only if [the official] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The Supreme Court has explicitly acknowledged that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Because Mr. Livingston is the non-movant, the court will assume that CMS and Metro Government knew that Mr. Livingston faced a substantial risk of harm because of their actions and inactions. That does not end the inquiry, however, because proof of deliberate indifference is also required, however. *See Farmer,* 511 U.S. at 834. As noted above, Mr. Livingston has provided the court with several copies of his grievances and the responses thereto, but these do not, absent more, suffice to establish deliberate indifference. He has presented no deposition testimony, no affidavits of CMS employees or other witnesses, no verified copies of discovery responses. His own conclusory statements are not enough. *See, e.g., Wright*, 455 F.3d at 713.

Moreover, as Metro Government correctly notes, the Sixth Circuit requires any inmate who complains of improper medical treatment, as Mr. Livingston does, must place verifying medical evidence in the record to establish a detrimental effect of such treatment. *See Napier v. Madison County,*, 238 F.3d 739, 742 (6th Cir. 2001). Mr. Livingston has not done so.

The court therefore concludes that Mr. Livingston's claims lack merit and should not survive summary judgment.

### III.

For the reasons stated herein, the court concludes that Mr. Livingston has not established any genuine issues of material fact with respect to his claims and, accordingly, defendants are entitled to judgment in their favor as a matter of law.

The court will enter and order consistent with this memorandum opinion.

**DATE:**




cc:     counsel of record
        Henry Beck Livingston, *pro se*